

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–16–685

| | |
|---|---|
| | **Opinion Delivered** February 22, 2017 |
| RANDY LEE COPELAND | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26CR-15-152-IV] |
| APPELLANT | |
| V. | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Appellant Randy Lee Copeland was convicted by a Garland County Circuit Court jury of robbery and battery, for which he was sentenced to twenty years in prison and one year in the county jail, respectively. These charges related to allegations that appellant and an accomplice attacked two women and stole a ring from one of the women. Appellant's sole argument on appeal is his contention that the trial court abused its discretion in not granting appellant longer than an overnight continuance to prepare to cross examine appellant's accomplice. We disagree that the trial court abused its discretion; further, we hold that appellant has failed to demonstrate prejudice resulting from the trial court's ruling. We therefore affirm.

First, we set forth the applicable law to the matter at hand. The trial court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking

SLIP OPINION

into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case. Ark. R. Crim. P. 27.3 (2016); *see also Travis v. State*, 371 Ark. 621, 625, 269 S.W.3d 341, 344 (2007). The burden is on the movant to show good cause for a continuance. *King v. State*, 317 Ark. 293, 877 S.W.2d 583 (1994). When a motion for continuance is based on a lack of time to prepare, the reviewing court considers the totality of the circumstances. *Davis v. State*, 2014 Ark. App. 452. It is within the trial court's discretion to grant or deny a motion for continuance, and the appellate court will not reverse the circuit court's decision absent a clear abuse of discretion. *Navarro v. State*, 371 Ark. 179, 264 S.W.3d 530 (2007); *Hudson v. State*, 2014 Ark. App. 253; *Haskins v. State*, 2013 Ark. App. 613. An appellant must also demonstrate that, as a result of the ruling on the motion for a continuance, he suffered prejudice that amounts to a denial of justice. *Hill v. State*, 2015 Ark. App. 587, 473 S.W.3d 556; *Smith v. State*, 2012 Ark. App. 613.

With these rules of law to guide us, we examine the course of events in this case relevant to appellant's request for a continuance. In the affidavit prepared in October 2014 for the purpose of providing probable cause to issue an arrest warrant against appellant, Arkansas State Police Trooper Russ Rhodes asserted the following facts gleaned through investigation. On the night of August 27, 2014, in Hot Springs, Kemi Irwin received a call from a phone number unknown to her. The male caller reported to Irwin, an apartment manager, that someone was rummaging through a particular dumpster on apartment property. Irwin went to investigate the situation with another resident of the apartment complex,

Regina Warren. The women found a black male at the dumpster, and he told them that the person who had been rummaging was in a nearby apartment. Irwin walked toward that apartment and was approached by another black male, who covered his head to conceal his identity. The first black male began physically attacking Irwin and trying to remove a diamond ring from her hand. The second black male began physically attacking Warren. Warren recognized appellant as her attacker because he was Irwin's former boyfriend. Warren heard appellant tell the other black male to cut the ring off Irwin's finger. Ultimately, Irwin removed the ring herself and gave it to her assailant. The men fled. Both Irwin and Warren were injured. Irwin provided law enforcement the cell number of the unknown caller, and the number was traced back to Robert Burrell. The trooper called the cell phone number, and Burrell answered. Further investigation revealed that the ring was pawned by Robert Burrell in Little Rock on the morning of August 28, 2014. The ring was recovered and returned to Irwin.

In March 2015, a criminal information was filed charging appellant with robbery and battery. There were multiple hearings (arraignment, review, omnibus, and disposition) conducted between April and October 2015. In January 2016, the State provided its witness list to defense counsel; the list included Trooper Rhodes and Robert Burrell. Also in January 2016, defense counsel provided a witness list to the State that included "[a]ll persons listed on the State's witness list."

Trial commenced on Wednesday, January 20, 2016, and was set for a two-day trial.

Defense counsel asked if the State intended to call Burrell to testify. The prosecutor responded that it was unknown at that time because Burrell had been arrested and there were negotiations pending. The prosecutor stated that Burrell had given a statement, and defense counsel stated that he had been given a rights form and a transcription of Burrell's statement on Tuesday. Defense counsel said that there was apparently also an audio and video of the statement that had not been provided to the defense. Defense counsel told the trial judge that if Burrell was going to testify, he was "entitled to at least some leave of the Court to digest it and see what we've got." The trial judge suggested that court could "take a break" or an "extended lunch break" if necessary to provide time for defense counsel's review. Appellant's attorney responded that "an hour or two may or may not be sufficient." The prosecutor clarified that the State did not have an audio or video recording but that two relevant pages of discovery had been faxed to defense counsel "a long time ago." Defense counsel reiterated that if Burrell were called to testify, he would need more than a short break to prepare, stating that "there are things in his statement that would take some time to possibly prepare for because he puts himself at certain places, times, that you could properly investigate and may be able to contradict which would call into question the veracity of what he's got to say."

Trial proceeded. Irwin, Trooper Rhodes, and the pawn shop owner testified in line with the facts asserted in Rhodes's affidavit. At trial, Irwin also testified that Warren's attacker was wearing shorts that she (Irwin) had purchased for appellant when they were in a dating

SLIP OPINION

relationship. Irwin described the shorts as predominantly white with black and gray on them; she said that they were long "golfer looking" shorts.

The prosecutor then announced the State's intent to call Burrell to testify; Burrell had entered into an agreement with the State. Defense counsel requested that he be permitted "a continuance of my cross-examination of him and presentation of our defense of at least a week" because "[t]here are things in his statement that I can track down for impeachment purposes that I cannot do overnight." The trial judge responded that "there's no way we're gonna continue this for a week," so defense counsel asked to continue the trial until Friday or the next Monday. The State objected to defense counsel's request. The trial judge stated that she would offer until the next morning (Thursday), given that this was set for a two-day trial, appellant had long known that Burrell might be called as a witness, and another trial was set for the following week. Defense counsel remarked that the discovery revealed Burrell's claim that he was not part of this crime and his claim that he was in Little Rock the whole time. When the trial judge asked defense counsel what he could do in two nights that he could not do overnight, defense counsel said, "I don't know." The trial judge remarked that defense counsel could not be surprised because there is always a possibility that a codefendant will end up giving the prosecution a statement. The trial judge stated that the first day of trial would be over around 4:30 p.m., so defense counsel would have all night to prepare to cross examine Burrell on Thursday, beginning at 9:00 a.m.

Burrell testified for the State on the first day of trial. Burrell said that appellant was his

SLIP OPINION

cousin, that appellant had borrowed his cell phone on August 27, 2014, and that appellant returned the phone the next day by bringing it to him (Burrell) at his Little Rock home. Burrell stated that appellant asked for help with pawning a diamond ring, that he (Burrell) pawned it at Braswell & Sons in Little Rock for $500, that appellant was with him, and that he gave all the money to appellant. Burrell said that appellant did not ever tell him how he came to be in possession of the diamond ring.

Defense counsel restated his request for a week-long continuance, which was denied. The trial court asked if defense counsel wanted a continuance of the trial until the next morning, and defense counsel said, "I will accept that because I have to."

On Thursday morning, defense counsel cross examined Burrell. He testified that he was still facing charges of robbery and battery but that the State had offered "two or three days ago" to reduce the charges to theft by receiving and to a probationary sentence in exchange for his testimony. Burrell said appellant came to his house on August 27 after appellant got out of jail, and he used Burrell's phone to "call someone who I thought was his girlfriend." Burrell claimed that appellant then left for Hot Springs, but Burrell did not know how appellant got to Hot Springs because he did not have a car. He testified that appellant came back with the ring on the morning of August 28 but that he (Burrell) did not know the ring was stolen. He said that appellant told him that he "got it back from his girlfriend" but did not admit robbing or harming anyone to get it. Defense counsel showed Burrell his statement, in which he said that appellant's sister, Brenda Copeland, took the three of them

to the pawn shop. Defense counsel also challenged the dates recited in Burrell's statement, but Burrell said he just did not remember correctly. Burrell denied that he went to Hot Springs and said that he was telling the truth. Burrell admitted that he was scared about the idea of being locked up, but he said that he would not lie to stay out of prison.

Warren testified in line with the affidavit provided for the arrest warrant. Warren was certain that her attacker was appellant; she knew his voice and recognized him as Irwin's former boyfriend because she saw him "daily." Warren also noted that he had on a pair of familiar "white plaid shorts." Warren identified Burrell as the other man who had attacked Irwin; Warren stated that she was "100% certain." Warren testified that, although she did not know his name, she had seen Burrell with appellant at a local bar a few months before the robbery.

Appellant testified in his own defense, stating that he did not participate in any robbery or attack, nor did he participate with his cousin Burrell in pawning a ring. Appellant recounted his own criminal history, but he flatly denied being involved in these crimes. He agreed that he and Irwin had broken up but said that their breakup was amicable and that he would have no reason to harm Irwin. Appellant knew Warren as Irwin's friend during the time that he and Irwin lived together. Appellant's siblings testified in appellant's defense as alibi witnesses, stating that appellant was with them during these criminal acts and when the ring was pawned.

The jury deliberated and found appellant guilty on both counts, resulting in the

SLIP OPINION

sentencing order being filed of record. This timely appeal followed.

Appellant argues that his attorney was diligent in preparing for trial and was unaware of Burrell's statement until right before trial. Appellant contends that nothing more was required of the defense to prepare for this witness who might testify only if a deal was struck with the State. Appellant argues that permitting him only an overnight continuance (i.e., denying him a longer continuance) prejudiced him because he was not permitted time to "develop impeachment" of Burrell's story. We disagree that appellant has shown that the trial court abused its discretion or that there was resulting prejudice.

Appellant was aware that Burrell was on the witness list at least two weeks prior to trial, and he even listed Burrell as a potential witness. Burrell, who is appellant's cousin, was well known to be the alleged accomplice from the time that charges were filed, months prior to trial. Appellant's attorney was provided Burrell's statement at least a day prior to trial, and the trial court provided a recess of court until the following day to prepare to cross examine Burrell. Notably, this recess was taken after Burrell testified for the State, permitting defense counsel preparation time to rebut Burrell's direct testimony. When asked what defense counsel could accomplish with a longer continuance that could not be accomplished overnight, defense counsel stated that he did not know. Thus, appellant was granted a continuance, and appellant failed to establish why he needed a longer continuance than the one he was granted. In addition, the State opposed a longer continuance, and the trial court was concerned with keeping the two-day trial with this jury on schedule, in keeping with the

SLIP OPINION

public's interest in prompt disposition of the case. We hold that the trial court did not abuse its discretion in this instance.

Moreover, appellant failed to demonstrate any resulting prejudice. Appellant was able to effectively cross examine Burrell. Defense counsel attempted to impeach Burrell's credibility based on the fact that he entered into a negotiated plea deal with the State for his testimony. Defense counsel attempted to challenge the contents of Burrell's statement on cross examination, pointing out dates or details that were not consistent. In addition, Warren's testimony directly challenged Burrell's claim that he was not in Hot Springs on the night of the robbery and battery, providing the impeachment that defense counsel desired. Warren unequivocally established appellant and Burrell as the two assailants. Appellant has failed to demonstrate resulting prejudice in the trial court's ruling that granted him an overnight continuance. *See Brown v. State*, 374 Ark. 341, 350, 288 S.W.3d 226, 233 (2008).

For the foregoing reasons, we affirm the trial court's discretionary ruling.

Affirmed.

GRUBER, C.J., and GLOVER, J., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.